UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHAKIRA NELSON, KENNETH S. JONES and RUBEN LOPEZ, JR.,     Plaintiffs | :    CIVIL ACTION NO. <br> : <br> : <br> : |
| v. | : <br> : |
| THE HARTFORD AUTO GROUP, INC. d/b/a BARBERINO MITSUBISHI-HARTFORD,     Defendant | :    JANUARY 27, 2017 <br> : <br> : <br> : |

## I. INTRODUCTION

1.  This is a suit brought by consumers residing in Connecticut regarding the purchase and sale of a motor vehicle. Plaintiffs bring this action to recover actual, statutory, and punitive damages, reasonable attorney's fees, and costs from the defendant, The Hartford Auto Group, Inc. d/b/a Barberino Mitsubishi-Hartford ("Barberino"), for engaging in unfair trade practices, including a "yo-yo" sale of a motor vehicle, also known as a spot delivery. The illegal, unfair and deceptive actions engaged in consisted of offering financing with Barberino acting as the creditor, upon Plaintiffs' acceptance of this offer, delivering possession of the vehicle to the Plaintiffs, making fraudulent statements to Plaintiffs to try to induce them to return the Vehicle, and temporarily repossessing the car.

2.  Plaintiffs allege that Barberino's conduct violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"); the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* (the "ECOA"); the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"); the Creditors Collection Practices Act, Conn. Gen. Stat. 36a-645 *et seq.* ("CCPA"), the

Connecticut Unfair Trade Practices Act, Conn. Gen. Stat §42-110a *et seq.* ("CUTPA"); Article 9 of the Uniform Commercial Code, Conn. Gen. Stat. §42a-9-101 *et seq.* ("UCC"); the provisions of the Connecticut Retail Installment Sales Financing Act, Conn. Gen. Stat. . §36a-770 *et seq.* ("RISFA"); and also constituted fraudulent misrepresentation, negligent misrepresentation, intentional infliction of emotional distress, negligent infliction of emotional distress, and breach of contract.

## II. PARTIES

3.  Plaintiff Shakira Nelson ("Nelson") is a consumer and natural person residing in East Hartford, Connecticut.

4.  Plaintiff Kenneth S. Jones ("Jones") is a consumer and natural person residing in Windsor, Connecticut.

5.  Plaintiff Ruben Lopez, Jr. ("Lopez") is a consumer and natural person residing in Hartford, Connecticut.

6.  Defendant, Barberino, is a Connecticut corporation that operates an automobile dealership in Hartford, Connecticut.

## III. JURISDICTION

7.  Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

8.  This court has jurisdiction over Barberino because it is a Connecticut company that regularly conducts business in this state.

9.  Venue in this court is proper, because the Plaintiffs reside in Connecticut, and the claims involve a transaction that occurred in Connecticut.

## IV. FACTUAL ALLEGATIONS REGARDING BARBERINO'S BUSINESS PRACTICES

10. Barberino, as part of its regular business practice, sells vehicles to consumers who require financing.

11. Consumers who finance their purchases have two options. They can either obtain financing directly from a lender and give the loan proceeds to Barberino, who would treat the transaction as a cash purchase or, they can finance their purchases by entering into retail installment contracts directly with Barberino.

12. Barberino generally does not retain possession of the retail installment contracts, but instead it assigns the contracts to third party banks or finance companies, who pay Barberino.

13. Barberino prefers that consumers finance their purchases by entering into retail installment contracts at the dealership, because Barberino makes a considerable percentage of its profits on motor vehicle sales through participation incentives. Specifically, banks and finance companies frequently permit Barberino to increase the interest rates at which consumers were approved and pay Barberino a portion of the extra finance charges generated by the increase.

14. Most consumers who purchase vehicles in Barberino enter into retail installment sales contracts, and Barberino enters into dozens of such contracts every month.

15. Generally, prior to providing a consumer with a retail installment contract and prior to delivering possession of a vehicle to a consumer, Barberino will obtain an agreement from a bank or finance company that it will accept assignment of the retail installment contract.

16. In some instances, Barberino obtains such prior approval by engaging in credit application fraud by misrepresenting various aspects of the transaction to the bank or finance company.

17. In those instances, the bank or finance company may decline to proceed with the transaction upon its discovery of the fraud, and Barberino is unable to assign the retail installment sales contract.

18. In other instances, in order to avoid losing the sale, Barberino will have the consumer enter into a retail installment contract in the hope that it will subsequently assign the contract to a bank or finance company.

19. In those instances, Barberino has a general business practice of seeking to bind the consumer to the transaction even though it does not intend to honor the retail installment contract if it is unable to assign it to a third party, and Barberino does not execute the contract at the time that the consumer does so.

20. In other instances, banks or finance companies may give Barberino an approval to accept assignment of a contract provided that certain conditions are satisfied.

21. In those instances, the banks or finance companies may decline to accept assignment after giving such an approval due to a determination that one or more conditions were not satisfied.

## V.      FACTUAL ALLEGATIONS REGARDING PLAINTIFFS' TRANSACTION

22.     On or about October 23, 2016, Nelson was interested in purchasing a vehicle and Jones, who is her friend, agreed to co-sign for her.

23.     Nelson and Jones went on Barberino's website and completed a credit application.

24.     On or about October 26, 2016, Nelson went with Lopez, who is her father, to Barberino's place of business in Hartford and met with a salesman who identified himself as Yaz.

25.     Nelson told Yaz that she was interested in purchasing a vehicle and that Jones had agreed to be a cosigner for the loan.

26.     Yaz instructed Nelson to complete another credit application and to fill in the information for Jones, which Nelson did with Jones's knowledge and consent.

27.     Yaz did not show Nelson any vehicles at that time but instead told Nelson to return the next day after Barberino had a chance to seek approval of the credit application.

28.     On or about October 27, 2016, Nelson and Lopez returned to Barberino. They were kept waiting for approximately six hours while Barberino worked on obtaining approval for financing until Yaz instructed them to return to Barberino on October 28, 2016.

29.     Nelson and Lopez returned to Barberino on October 28, 2016, and they were kept waiting for another approximately six hours until Yaz told them Barberino was still working on the credit application and instructed them to return to the dealership the next day.

5

30. On October 29, 2016, Nelson, Lopez, and Jones returned to Barberino. They were kept at the dealership for another approximately 6 hours until Yaz told Nelson that financing was approved.

31. Yaz told Nelson that the only vehicle for which she had been approved was a used 2014 Ford Fusion (the "Vehicle").

32. Yaz told Nelson that her payments would be $410 per month for four years.

33. Nelson paid a deposit of $500, but she was not permitted to test drive the Vehicle because Yaz said he did not have dealer plates.

34. Yaz provided a Purchase Order and Retail Installment Contract (the "Contract") and other documents to Lopez and Jones to sign.

35. Nelson asked Yaz why he was not having her sign any of the purchase paperwork, and Yaz told her that it was better to use Lopez and Jones on the paperwork because they had longer working histories than Nelson.

36. The Contract provided that Jones was the "Buyer", Lopez was the "Co-Buyer" and that Barberino was the "Seller-Creditor".

37. The Contract also stated that Barberino would assign the contract to CPS, Inc. ("CPS").

38. Jones and Lopez both signed the Contract, and Barberino delivered the Vehicle to Nelson.

39. The Contract between Jones and Lopez and Barberino was binding and enforceable by Jones and Lopez, and Nelson was an intended third party beneficiary of that Contract.

6

40. Jones and Lopez were entitled to possession of the Vehicle, and they were entitled to permit Nelson to possess and use the Vehicle, provided that they make the monthly installment payments under the Contract.

41. The first installment payment was not due until December 13, 2016.

42. The Contract utilized a cash sale price of $17,487.24, and provided for an amount financed of $19,025.00, and called for Plaintiffs to make 72 monthly payments of $426.23, and it provided for interest at an annual percentage rate of 17%.

43. The 72-month payment period was substantially longer than the period that Yaz had represented to the Plaintiffs.

44. Nelson took delivery of the Vehicle on November 15, 2016 with the knowledge and consent of Barberino, Jones, and Lopez.

45. Approximately two days after Nelson took delivery of the Vehicle, Lopez received a call from CPS seeking to confirm information on the credit application that he had co-signed for Jones. Specifically, CPS wanted to confirm that Lopez resided at Jones's address in Windsor, CT.

46. Lopez informed CPS that he did not reside with Jones.

47. Although the Contract provided that Barberino would assign the Contract to CPS at the time that it prepared the Contract and provided it to Plaintiffs for execution, it was unable to do so or it declined to do so, or CPS reassigned the Contract to Barberino.

48. On information and belief, CPS declined to accept assignment of the Contract or to retain the Contract, because it discovered that Barberino had engaged in credit application fraud by falsely informing CPS that Jones and Lopez were the buyers

of the Vehicle and that they cohabitated at Jones' address; Barberino may have committed other types of credit application fraud as well.

49. Although Barberino was contractually obligated to permit Jones and Lopez to retain possession pursuant to the Contract, it was unwilling to do so, and it embarked upon a scheme to retake possession of the Vehicle from Nelson.

50. On or about December 3, 2016, Nelson received a text message from Yaz advising that CPS did not approve the loan and that she was required to return the Vehicle to Barberino.

51. Yaz threatened that Barberino would report to the police that Nelson had stolen the Vehicle unless she returned it as demanded.

52. Nelson did not return the Vehicle as demanded, because she had sought legal advice and believed that she, Jones, and Lopez were entitled to retain possession provided that they made the monthly installment payments to Barberino, who remained the holder of the Contract.

53. Later, Yaz sent an email to Nelson stating that there was a new credit approval, and he instructed her to return to the dealership to sign new contract documents. He told Nelson she needed to bring the Vehicle back to the dealership so Barberino could take pictures of the odometer for the new lender.

54. This was a false and deceptive statement that was made for purposes of inducing Nelson to bring the Vehicle to Barberino so that it could repossess it.

55. Nelson believed Yaz and, on November 5, 2016, she returned to Barberino with the Vehicle.

56. Immediately after Nelson parked the Vehicle, Barberino employees blocked the Vehicle to prevent Nelson from leaving, and they removed the license plates from the Vehicle so that it could not be legally driven from the dealership.

57. A Barberino employee believed to be a finance manager told Nelson that there was no new loan approval and that Nelson could not retake possession of the Vehicle.

58. Barberino repossessed the Vehicle because it did not want to be bound by the Contract that it had entered into with Jones and Lopez due to its inability to assign the Contract to a third party.

59. Eventually, Nelson was able to speak with John Mocadlo, one of the owners and a principal of Barberino, and Michael Baker, the General Manager.

60. Nelson informed them that she had spoken with a lawyer who had agreed to represent her and who had informed her that Barberino did not have the right to retake the Vehicle.

61. Mocadlo and Baker knew that Barberino had no legal right to retake possession of the Vehicle, because they were familiar with lawsuits brought against other dealerships in which Mocadlo was an owner or manager or both, and they had learned from that experience that Barberino was obligated under such circumstances to permit the consumer to retain the vehicles so long as they made monthly payments.

62. Despite their knowledge that Barberino had no right to retake the Vehicle, they nevertheless had decided to retake possession of this Vehicle, because they believed that they would get away with it.

63. Upon learning that Nelson knew her rights and had access to legal counsel, Mocadlo and Baker later agreed to permit Nelson to retake possession of the Vehicle.

64. Barberino did not return both of the license plates for the Vehicle to Plaintiff but instead improperly kept one of the plates.

65. On or about November 16, 2016, Baker notified Nelson that he was able to obtain approval for new financing, and he requested that Nelson, Lopez and Jones return to the dealership to sign new contract documents.

66. Nelson asked Baker to fax the new contract documents to her lawyer for review, and Baker refused.

67. Nelson, who was pregnant, became very upset and stressed and she began to bleed. She was later transported to the hospital for observation and suffered complications in her pregnancy due to the stress.

68. On November 22, 2016, Plaintiffs, through the undersigned counsel, notified Barberino that they intended to retain possession of the Vehicle and they would make monthly payments to Barberino as the Seller-Creditor on the Contract.

69. On November 28, 2016, Barberino prepared a new contract and provided it to the undersigned counsel.

70. This Contract contained a down payment that was in excess of the down payment that Plaintiff had agreed to pay and, on information and belief, Barberino was attempting to engage in credit application fraud by misrepresenting to an assignee the amount paid as a down payment, and it intended to violate the Truth in Lending Act, by listing a false down payment on the Contract.

71. Barberino withdrew the offer of the new contract when the existence of the higher down payment was brought to Baker's attention.

72. On January 4, 2017, Barberino sent a letter directly to Jones and Lopez, even though Barberino knew Jones and Lopez were represented by legal counsel, advising that Barberino was not able to secure third-party financing and advising that Barberino was the lien holder and instructing Plaintiffs to forward installment payments to Barberino.

## V. CAUSES OF ACTION

### A. TRUTH IN LENDING ACT

73. Barberino violated TILA and Regulation Z by failing to make proper disclosures to the Plaintiffs prior to the time that they became committed to the transaction.

74. Barberino further violated TILA by failing to identify the creditor in the disclosures.

75. To the extent that the extension of credit to Plaintiffs was conditional, Barberino violated TILA because it understated the Annual Percentage Rate, in that the monthly payments presume the extension of credit as of the date of the Contract.

76. Barberino is liable to Plaintiffs for their actual damages pursuant to 15 U.S.C. § 1640(a)(1), plus statutory damages of $2,000, plus a reasonable attorney's fee pursuant to 15 U.S.C. § 1640(a)(3).

### B. EQUAL CREDIT OPPORTUNITY ACT

77. Nelson is young, female, pregnant, and African American.

78. By structuring the transaction with Jones and Lopez as the buyers, Barberino took an adverse action with respect to Nelson's credit application.

79. Barberino violated ECOA by failing to provide Nelson, within 30 days of its rejection of her credit application, with a written notice that it had taken adverse action as required by 15 U.S.C. § 1691(d)(1).

80. Barberino further violated ECOA by failing to provide Nelson with a written statement of the reasons for its action or notice of her right to request such a statement as required by 15 U.S.C. § 1691(d)(2).

81. Barberino is liable to Nelson for actual damages and punitive damages of up to $10,000, pursuant to 15 U.S.C. § 1691e.

### C.   FAIR CREDIT REPORTING ACT

82. Barberino violated FCRA § 1681b(f) by inquiring into Plaintiffs' credit reports following the execution of the Contract, even though Plaintiffs were not seeking an extension of credit and had no desire to obtain credit at that time.

83. For its negligent violations of the FCRA, Barberino is liable to each of the Plaintiffs for their actual damages, attorneys' fees, and costs pursuant to FCRA § 1681o.

84. Should it be determined that Barberino's violation of the FCRA was willful, then Plaintiffs are each entitled to the greater of their actual damages or statutory damages of up to $1,000 pursuant to FCRA § 1681n.

### D.   UCC ARTICLE 9 VIOLATIONS

85. Barberino's conduct in inducing Nelson to bring the Vehicle to its lot under false pretenses, its removal of the Vehicle's plates, and its blocking-in of the Vehicle so

that it could not be removed, constituted a repossession within the meaning of Article 9 of the UCC.

86. Barberino violated Article 9 by repossessing the Vehicle when Jones and Lopez were not in default.

87. Barberino further violated Article 9 of the UCC by breaching the peace in the repossession by taking the Vehicle despite the oral objection to the repossession by Nelson, who was in possession of the Vehicle at the time of repossession.

88. Pursuant to C.G.S. § 42a-9-625, the defendant is liable to Jones and Lopez for an amount equal to the finance charge of $11,663.56 as shown on the Contract plus 10% of the amount financed, or $1,902.50, for a total of $13,566.06.

### E.  RETAIL INSTALLMENT SALES FINANCING ACT – WRONGFUL REPOSSESSION

89. Barberino's conduct in inducing Nelson to bring the Vehicle to its lot under false pretenses, its removal of the Vehicle's plates, and its blocking-in of the Vehicle so that it could not be removed, constituted a repossession within the meaning of Conn. Gen. Stat. § 36a-785 of RISFA.

90. Barberino violated RISFA by repossessing the Vehicle when Jones and Lopez were not in default.

91. Barberino further violated RISFA by breaching the peace in the repossession by taking the Vehicle despite the oral objection to the repossession by Nelson, who was in possession of the Vehicle at the time of repossession.

92. Plaintiffs are entitled to twenty-five percent (25%) of the amount paid under the contract, or $125, pursuant to Conn. Gen. Stat. § 36a-785(i).

93. Additionally, because Barberino's violation of RISFA was willful, Jones and Lopez are entitled to an order pursuant to Conn. Gen. Stat. § 36a-786 that Barberino is not entitled to collect any finance or credit charges under the Contract.

### F. RETAIL INSTALLMENT SALES FINANCING ACT – WRONGFUL FORMATION OF CONTRACT

94. Barberino engaged in additional violations of RISFA as follows:

   a. It treated the Contract as conditional upon assignment to a third party without including that agreement as part of the Contract, as required by § 36a-771(a);

   b. It failed to deliver to Jones and Lopez a true and complete executed copy of the Contract at the time they signed it, as required by § 36a-771(a);

   c. It violated TILA, which is incorporated as a part of RISFA by § 36a-771(b), which requires sellers to comply with sections 36a-675 to 36a-685 which, in turn, incorporate the requirements of TILA and Regulation Z.

95. Jones and Lopez are entitled to an order pursuant to Conn. Gen. Stat. § 36a-786 that Barberino is not entitled to collect any finance or credit charges under the Contract.

### G. CONNECTICUT COLLECTIONS PRACTICES ACT

96. On or around November 22, 2016 and again on or around December 5, 2016, Barberino was notified in writing that Plaintiffs had retained an attorney in connection with the Vehicle and the Contract, and Barberino was provided with the name, address and telephone number of Plaintiffs' attorney.

97. Barberino received the aforementioned notices.

98. Despite having notice of the representation and the name, address and telephone number of Plaintiffs' attorney, Barberino subsequently contacted Plaintiffs Jones and Lopez in writing in an attempt to collect the debt.

99. Barberino has violated the CCPA and is liable to Jones and Lopez for statutory damages of up to $1,000 plus attorney's fees and costs.

### H.  CONNECTICUT UNFAIR TRADE PRACTICES ACT

100. The actions of Barberino in representing to Plaintiffs that Jones and Lopez had been approved for financing on the purchase of the Vehicle, then delivering possession of the Vehicle to Plaintiffs, then demanding Plaintiffs return to the Vehicle and threatening to call the police, and then temporarily repossessing the Vehicle, and its other conduct as previously alleged, constituted unfair and deceptive acts in violation of the CUTPA.

101. The actions of Barberino, as described above, have caused Plaintiffs ascertainable losses and damages in that they were improperly temporarily deprived of the use of the Vehicle, they are making installment payments for a period longer than represented, and they have incurred losses due to their travel to Barberino and to meet with their lawyer, and they have caused extreme distress to Plaintiffs, especially Nelson, who has suffered complications in her pregnancy and has incurred costs as a result.

102. For Barberino's violations of CUTPA, Plaintiffs seek actual damages, punitive damages and a reasonable attorney's fee and costs.

### I. NEGLIGENT MISREPRESENTATION

103. The actions of Barberino, acting through its duly authorized employees for whose actions it is liable, in representing to Plaintiffs that they had been approved for financing on the purchase of the Vehicle, and then delivering possession of the Vehicle to Plaintiff, and thereafter temporarily repossessing the Vehicle when the third party refused to purchase or retain the Contract from Barberino, constituted a negligent misrepresentation in that the defendant's agents and employees, while acting within the scope of their authority as agents and employees for Barberino, failed to exercise reasonable care or competence in obtaining or communicating proper information regarding the financing of Plaintiffs' Vehicle and thereby supplied false information for the guidance of Plaintiffs in purchasing the Vehicle, and caused Plaintiffs, by their justifiable reliance upon this information, to suffer pecuniary loss.

104. The actions of Barberino have caused Plaintiffs damages.

### J. FRAUDULENT MISREPRESENTATION

105. The actions of Barberino, acting through its duly authorized employees for whose actions it is liable, in representing to Plaintiffs that they had been approved for financing on the purchase of the Vehicle, and then delivering possession of the Vehicle to Plaintiff, and thereafter threatening to call the police and temporarily repossessing the Vehicle when the third party refused to purchase or retain the Contract from Barberino, constituted a fraudulent misrepresentation in that Barberino, by its duly authorized agents and employees, made a false representation as to the finance approval for the Vehicle, which representation was made as a statement of fact, though it was untrue and known to be untrue by Barberino's agents and employees who were acting within

16

the scope of its authority and employment when they made the representation, and they were made to induce Plaintiffs to act upon them, and Plaintiffs did act upon the false representations to Plaintiffs' injury.

106. Plaintiffs are entitled to damages, including common law punitive damages.

### K. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

107. Barberino intended to cause Nelson emotional distress when it threatened to report the Vehicle as stolen.

108. Barberino's objective in causing emotional distress was to coerce her to return the Vehicle.

109. Plaintiff Nelson was pregnant at the time of the Contract, and she suffered significant stress due to the actions of Barberino.

110. Nelson's distress was severe and did result in physical symptoms of stress which ultimately caused medical complications in her pregnancy.

111. Barberino is liable to Nelson for her damages, including common law punitive damages.

### L. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

112. Barberino's actions as described above created an unreasonable risk of causing Nelson emotional distress, and did cause Nelson emotional distress.

113. Barberino acted negligently in causing such emotional distress.

114. Plaintiff Nelson was pregnant at the time of the Contract, and she suffered significant stress due to the actions of Barberino.

115. Nelson's distress was severe and did result in physical symptoms of stress which ultimately caused medical complications in her pregnancy.

116. Barberino is liable to Nelson for her damages.

### M. BREACH OF CONTRACT

117. Barberino's wrongful repossession constituted a breach of the Contract, and it is liable to Nelson and Lopez for damages.

**Wherefore, Plaintiffs claim** actual damages, TILA statutory damages of $2,000, punitive damages of up to $10,000 pursuant to the ECOA, statutory damages of up to $1,000 pursuant to the FCRA, statutory damages under the CCPA; statutory damages pursuant to Article 9 of the UCC, statutory damages pursuant to RISFA, an order that there is no right to a finance charge, punitive damages pursuant to CUTPA, common law punitive damages for its willful and wanton conduct, and attorney's fees and costs.

PLAINTIFFS, SHAKIRA NELSON, KENNETH S. JONES and RUBEN LOPEZ, JR.

By: /s/ *Daniel S. Blinn*
Daniel S. Blinn (ct02188)
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408
Fax. (860) 571-7457
dblinn@consumerlawgroup.com